UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REBECCA ARIEN SALINAS,

      Plaintiff,                           Civil Action No. 12-11614

v.                                   HON. VICTORIA A. ROBERTS
                                   U.S. District Judge
                                   HON. R.  STEVEN WHALEN

COMMISSIONER OF SOCIAL          U.S. Magistrate Judge
SECURITY,

      Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Rebecca Arien Salinas brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act.   Both parties have filed summary judgment motions [Docket #12, 17] which were referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). On April 30, 2013, this Court requested supplemental briefing after discovering that transcript pages 244-254 pertained to an individual other than Plaintiff.[1] *Docket #19.*   For the reasons set forth below, I recommend that Plaintiff's Motion for Summary Judgment [Doc. #12] be GRANTED, that Defendant's Motion for Summary Judgment [Doc. #17] be DENIED, and that the case be remanded for further administrative proceedings, which will include (1) redaction of files pertaining to the other individual, (2) re-contacting the treating physician to determine if additional treating records exist for Plaintiff, and (3) consideration

---

[1] Page 244 is a cover sheet indicating the Plaintiff's name, Rebecca Salinas. The records that follow on pages 246 to 254 pertain to a different individual with the first name of Rebecca but a different surname.

of records submitted subsequent to the September 10, 2012 administrative opinion.

## PROCEDURAL HISTORY

On June 1, 2009, Plaintiff filed applications for DIB and SSI, alleging disability as of March 25, 2009 (Tr. 149-155, 156-160).  After the initial denial of the claim, Plaintiff requested an administrative hearing, held on August 23, 2010 in San Jose, California (Tr. 50). Administrative Law Judge ("ALJ") Regina L. Sleater presided.  Plaintiff, represented by Mr. Morrissey, testified by teleconference (Tr. 53-59, 71-81). Medical Expert ("ME") Woodrow Janese (Tr. 58-71) and Vocational Expert ("VE") Michelle Robb also testified (Tr. 82-86). On September 10, 2010, ALJ Sleater found that Plaintiff possessed transferrable work skills allowing her to the perform the work of a loan processor as well as a range of unskilled work (Tr. 105-107).   On March 21, 2012, the Appeals Council denied Plaintiff's request for review (Tr. 1-9).  Plaintiff filed suit in this Court on April 10, 2012.

## BACKGROUND FACTS

Plaintiff, born April 15, 1974, was 36 at the time of the ALJ's decision (Tr. 107, 149). She completed high school (Tr. 189) and worked previously as an assembler, bartender, cashier, bank teller, and fast food manager (Tr. 185).  Her application for benefits alleges disability as a result of left arm numbness and walking problems (Tr. 184).

### A.    Plaintiff's Testimony

Plaintiff testified that she lived with her husband, sixteen-year-old son, and a cat (Tr. 54).  She stated that she received treatment approximately two months prior to the hearing (Tr. 54).  She reported that she was currently taking Betaseron and Tylenol (Tr. 54-55).  She stated that a previous prescription for Tysabri was discontinued after she experienced hives and fainting spells (Tr. 56).  She stated that she had been diagnosed with optic neuritis of the left eye a few months earlier (Tr. 57).

Plaintiff stated that she had not undergone Carpal Tunnel release surgery, but had previously experienced symptoms of Carpal Tunnel Syndrome ("CTS") (Tr. 64).

Plaintiff stated that on a typical day, she would arise at nine or ten, eat breakfast, perform household chores, nap, and take a walk with her son (Tr. 72). She stated that her walks with her son lasted between five and 15 minutes (Tr. 72). She alleged that left hand weakness prevented her from using a computer keyboard (Tr. 73). Plaintiff, left-handed, stated that she experienced intermittent pain and numbness in that hand, adding that the condition caused sleep disturbances (Tr. 73). She alleged left foot weakness (Tr. 74).

Plaintiff testified that in the previous March, she experienced the symptoms of leg weakness and drooling (Tr. 74). She stated that she became tired after sitting for extended periods (Tr. 74). In response to questioning by her attorney, she stated that her ability to obtain treatment was compromised by the lack of medical insurance (Tr. 75-56). She reported that on a typical day she took two two-hour naps (Tr. 76). She alleged concentration problems and occasional incontinence, adding that she would require a job allowing her to take unscheduled restroom breaks (Tr. 78). She stated that she had been prescribed depression medication but was unable to afford the $40 monthly prescription cost (Tr. 81). She alleged right eye vision impairment (Tr. 80). She opined that she was unable work due to left hand problems, fatigue, depression, and the need to nap for long periods each day (Tr. 81).

### B.  Medical Expert Testimony

Dr. Woodrow Janese testified that Plaintiff's medical records showed a 2004 diagnosis of multiple sclerosis (Tr. 59). He noted additional diagnoses of CTS and lower extremity vascular problems (Tr. 59). He observed that Dr. Dardis' finding of right eye problems was not accompanied by an ophthalmological exam (Tr. 60). Dr. Janese stated that

treating records showed anxiety and fatigue "at times," but opined that Plaintiff's multiple

sclerosis ("MS") had not gotten worse and "might have gotten better" (Tr. 60).  He noted that

her medical complaints did not "seem to be persistent" (Tr. 61).  He opined that Plaintiff's

former use of Tysabri and current use of Betaseron did not imply that the condition of MS

was worsening (Tr. 66-67).  He stated that "[t]he criteria for the diagnosis of [MS] is a very,

very convoluted and there are, there's a lot of other factors that point towards that.  Probably

not the first but very close to the first economics because it would be the pharmaceutical

company make a great deal of money with these medicines" (Tr. 68).

### C. Medical Evidence

### 1.  Treating Sources

In January, 2004, Plaintiff sought emergency treatment for left hand tingling,

numbness, and pain (Tr. 234-243).  A March, 2004 MRI of the cervical spine showed an

abnormal signal at C-2  (Tr. 243).  An MRI of the brain showed "scattered foci of non-

enhancing abnormal signal" (Tr. 242).

In September, 2009, Gregory J. Dardas, M.D. noted that Plaintiff was depressed and

discouraged as a result of the inability to seek additional treatment due to insurance issues

(Tr. 275).   Dr. Dardas noted that Plaintiff "had significant radiographic and clinical

progression" and was "clearly depressed" (Tr. 275).  He prescribed Effexor for depression

(Tr. 275).  The following month, Plaintiff exhibited "left sided numbness, weakness, gait

problems and rather significant fatigue" (Tr. 274).  In December, 2009, Plaintiff reported

good results after taking one dose of Tysabri (Tr. 273).  She reported continued symptoms

of optic neuritis, noting that she had stopped driving (Tr. 273).  The same month, R.N. Larry

Randall noted that Plaintiff passed out during an infusion of Tysabri, recommending that Dr.

Dardas prescribe anti-anxiety medication for use at the next infusion (Tr. 272).   In

November, 2009, Plaintiff sought emergency treatment for vision changes (Tr. 303).   Dr. Dargas performed a neurodiagnostic vision exam, finding the left eye readings unremarkable, but abnormal results on the right "consistent with the clinical diagnosis of optic neuritis"(Tr. 293).

### 2.  Non-Treating Sources

In July, 2009, Amanda Sweet performed a non-examining Physical Residual Functional Capacity Assessment on behalf of the SSA (Tr. 256-262).   Sweet cited Dr. Dardas' October, 2008 and May, 2009 findings that his patient did not experience medication side effects and was "'doing well,'" apparently unaware that she was relying on records belonging to another of Dr. Dardas' patients (Tr. 256 citing 251-252, 254).  Sweet found that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently; sit, stand, or walk for six hours in an eight-hour workday; and limited pushing and pulling due to fatigue and a mild right-sided limp (Tr. 256-257).   Sweet limited Plaintiff to occasional climbing, balancing, stooping, kneeling, crouching, and crawling (Tr. 257).   Again erroneously citing Dr. Dardas' October, 2008 treating notes for an individual other than Plaintiff, Sweet found Plaintiff capable of unlimited reaching and feeling, but limited handling and fingering to frequent activity (Tr. 257).   Sweet found that Plaintiff should avoid concentrated exposure to frequent vibration (Tr. 259).   Once again erroneously relying on the treating records of another individual, Sweet concluded that Plaintiff's allegations were only partially credible (Tr. 260).

### 3.  Material  Erroneously Included in the Transcript (Tr. 244-254)

In October, 2008, neurologist Gregory J. Dardas, M.D. stated that his patient (an individual sharing the Plaintiff's first name of Rebecca, but with a different surname) was doing "quite well in all areas with respect to her multiple sclerosis" (Tr. 254).  He noted that

she required the occasional use of a cane (Tr. 253). He re-prescribed "Rebif" and recommended that she use yoga for an improvement in symptoms (Tr. 252). In May, 2009, Dr. Dardas noted that recent "lab work" was unremarkable (Tr. 251). The records indicated that the individual's carpal tunnel syndrome had been relieved with surgery (Tr. 252).

### 4. Material Submitted Subsequent to the Administrative Opinion (Tr. 309-555)

Dr. Dardas' June, 2010 treating notes state that Plaintiff "was doing reasonably well," but continued to have loss of vision and left arm tingling (Tr. 359). September, 2010 treating notes by Dr. Dardas state that Plaintiff had responded well to a change in medication (Tr. 364). In January, 2011, Plaintiff reported depression due to loss of vision, and physical limitations due to MS (Tr. 335). In February, 2011, Plaintiff reported manipulative limitations (Tr. 332). She stated that Cymbalta alleviated her depression slightly (Tr. 332). In March, 2011, Plaintiff underwent testing in response to repeated fainting spells, testing positive for neurocardiogenic syncope (Tr. 344). Testing for atrial fibrilation was negative (Tr. 316). The same month, Dr. Dardas noted that Plaintiff denied excessive fatigue but required a nap each day (Tr. 366). In August, 2011, Plaintiff sought emergency treatment for facial numbness (Tr. 372-373). In October, 2011, Plaintiff experienced leg numbness (Tr. 375, 377).

A January, 2012 MRI of the cervical spine showed demyalinating plaque consistent with the diagnosis of MS (Tr. 554). An MRI of the brain also showed demyalinating changes consistent with the MS diagnosis (Tr. 555).

### D. Vocational Expert Testimony

VE Michelle Robb classified Plaintiff's former work as a bartender as exertionally light and semiskilled; store clerk, light/unskilled; fast food manager, light/semiskilled; and

bank teller, light/semiskilled[2]  (Tr. 83).  The VE found that an individual capable of a full range of exertionally medium work could perform all of Plaintiff's past work (Tr. 83).  The ALJ then posed a more detailed hypothetical question:

> Now taking someone with the same age, education and vocational background who can frequently lift 10 pounds, occasionally lift 20 pounds with the same sit/stand and walk for six out of eight hours but who has a limit in pushing and pulling to only occasional.  And who can only occasionally perform all of the posturals and who can only frequently perform handling and fingering and whose feeling is limited in her left hand because the left hand is numb so not available to do fine fingering, who should avoid concentration, vibrations, unprotected heights and open machinery.  Could such a person do the claimant's past relevant work? (Tr. 84).

The VE found that the above-limited individual could perform Plaintiff's past relevant work as a store clerk (Tr. 84).  The VE testified if the same individual were further limited by "a visual limitations on the right eye" creating "almost no functional use of the right eye," all past work would be eliminated, but that the individual possessed the transferrable skills (from the work of bank teller) allowing her to work as a loan processor (Tr. 85).  The VE stated that the individual could also perform the exertionally light, unskilled work of a counter attendant (4,000 positions in the regional economy); information clerk (2,400); and usher (2,200) (Tr. 85-86).  The VE concluded her testimony by stating that if the same individual required two-hour naps everyday and additional, unscheduled five-minute work breaks, all competitive employment would be eliminated (Tr. 86).

### E.    The ALJ's Decision

---

[2]20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools;  *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy*  work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

Citing the medical evidence of record, ALJ Sleater found that while Plaintiff experienced the severe impairments of multiple sclerosis, right vision problems, and bilateral CTS, none of the conditions met or equaled an impairment listed in Appendix 1 Subpart P, Regulations No. 4. (Tr. 97, 99). The ALJ found that Plaintiff retained the following Residual Functional Capacity ("RFC") for a range of light work with the following additional work limitations:

> [Plaintiff] may stand and walk for six hours in an eight-hour day, and sit for six hours in an eight-hour day. She may push/pull occasionally with the upper and lower extremities and she may perform all postural activities occasionally. She can perform handling and fingering on a frequent basis but she has limited ability to feel with the left hand. She has a limited ability to see with the right eye, such that she does not have depth of field or the ability to see objects coming from the right. The claimant must avoid concentrated exposure to vibration, unprotected heights, and open machinery (Tr. 99).

Adopting the VE's job findings, the ALJ found that Plaintiff possessed transferrable skills allowing her to work as a loan processor (Tr. 105) and could perform the unskilled work of a counter attendant, information clerk, and usher (Tr. 106).

The ALJ discounted Plaintiff's allegations of disability, noting her admitted ability to perform light household chores, take daily walks, cook, and socialize (Tr. 103). The ALJ found that notwithstanding Plaintiff's financial limitations, "the available treatment notes would not suggest that there is cause for significant concern for [her] health, or that she is in desperate need of treatment beyond that which she is receiving" (Tr. 104).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S.

389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,*   800 F.2d 535, 545 (6th Cir. 1986)(en banc).  In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ.  *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five  to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## **ANALYSIS**

### **A.  The Erroneous Citation to the Records of Another Individual**

In my April 30, 2013 order directing supplemental briefing, I noted as follows:

A review of the administrative transcript shows that certain medical records are included at Tr. 244-254 that pertain to someone other than the Plaintiff, who shares the first name of Rebecca but has a different surname. The erroneously included records are of a woman who was born in 1944.  The Plaintiff was born in 1974.

At the hearing before the Administrative Law Judge ("ALJ"), the Medical Expert referred to the erroneously included records in his testimony (Tr. 60). The non-examining source performing a Residual Functional Capacity ("RFC") Assessment cited these records (Tr. 256). The ALJ directly cited these records in support of the RFC (Tr. 102), and also found that Plaintiff was not credible based on "available treating notes" (Tr. 104). Finally, the Defendant has cited these records in support of the ALJ's decision. *Defendant's Brief*, at 6-7, 11 [Doc. #17].  *Docket #19* at 1-2.

The Court ordered parties to address "the impact of these records on the question of whether the Plaintiff is entitled to relief from this Court." *Id.* at 2.

In the supplemental brief, Plaintiff  contends that the administrative findings have been "tainted" by reliance on erroneously included records ("other records") in the Physical Residual Functional Capacity Assessment (Tr. 256 citing 251-252, 254, 260), the testimony by ME Dr. Janese (Tr. 60, 63-64), and by the ALJ (Tr. 101-102).  *Docket #20.*

Defendant's original argument for upholding the administrative opinion relied heavily on the "other records," and/or the ALJ's erroneous citation to them.  *Docket 17* (citing Tr. 6-7, 10-20)).  However, Defendant now contends in its supplemental brief that the ALJ's citation to the erroneous records was harmless error.

Defendant is wrong. The records that pertain to a different person pervade every aspect of the administrative proceedings.  In support of her conclusions, the ALJ cited Dr. Dardas' October, 2008 and May, 2009  "other records" purportedly showing that Plaintiff was "'doing quite well'"(Tr. 101-102 citing 254).  The ALJ not only cited the "other records"

but also relied on the interpretation of these records by other medical sources. The ME

testified that his conclusion that Plaintiff was not disabled was based, at least in part, on the

October, 2008 and May, 2009 reports (Tr. 63-64). The ALJ explicitly relied on the ME's

non-disability conclusion in support of her own non-disability finding (Tr. 63-64, 100).

The ALJ's credibility determination was also tainted by citation to the erroneously

included material. She quoted these records in support of the finding that Plaintiff had "'no

major issues' relating to her MS for quite some time" and that "she ha[s] done 'well with her

MS without any exacerbation'" (Tr. 101-102). The ALJ cited the same records to discredit

Plaintiff's allegations of limitations by noting that she responded well to "exercise or yoga

type stretching" although the exercise/yoga treating notes referred not to Plaintiff, but to the

"Rebecca" that was born in 1944 (Tr. 102). Relying on the same records, the ALJ

erroneously found that Plaintiff's symptoms of CTS had been relieved with surgery, despite

Plaintiff's testimony that she had never undergone such surgery (Tr. 63-64, 102).

Defendant observes that the ALJ found that the medical records were "quite sparse"

in support of its contention that citation to the erroneously included records amounts to

harmless error. *Docket #22* at 4 (Tr. 101). To the contrary, the paucity of treating records

for the relevant period makes the ALJ's reliance on the wrong records even more critical.

Given that Dr. Dardas appears to have mistakenly provided the records of another patient for

the period in question, the Court cannot determine whether (1) additional treating records do

not exist or, (2) additional records exist but were erroneously substituted with the file of

another patient.

An ALJ "must articulate, at some minimum level, his analysis of the evidence to allow

the appellate court to trace the path of his reasoning." *Lowery v. Commissioner, Social Sec.

Administration,* 55 Fed.Appx. 333, 339, 2003 WL 236419, *5 (6th Cir. January 30, 2003);

*Diaz v. Chater,* 55 F.3d 300, 306 (7th Cir.1995).   Here, the  "path of reasoning" has been obscured by the ALJ's reliance on the treating records of another individual.  This Court is thus unable to determine how the ALJ would have found if she had made her determination without the erroneously included records and perhaps with additional records of the Plaintiff. "To be entitled to substantial deference . . . agency rulings must clearly articulate the rationale underlying the decision." *Bailey v. Commissioner of Social Sec.*, 173 F.3d 428, 1999 WL 96920, *3-4 (6ᵗʰ Cir. February 2, 1999)(citing *Hurst v. Secretary of Health & Human Servs.,* 753 F .2d 517, 519 (6th Cir.1985)).  Because the ALJ's rationale is based largely on the records of another individual, it is impossible to determine whether substantial evidence supports the administrative decision.

It is of great concern that while the erroneously included records were reviewed by (1) a non-examining assessor (2) Plaintiff's attorney (3) the ME testifying at the hearing  (4) the ALJ  (5) at least one individual at the Appeals Council level, and (6) Defendant's counsel (all tasked with reviewing Plaintiff's disability claim), not one of these individuals noticed that they pertained to someone other than the Plaintiff. I appreciate that all of the players in Social Security cases–including this Court–are working under tremendous caseload and docket pressures, but at the very least, we need to make sure that the correct records match up with the correct claimant.  Indeed, how can there be any confidence whatsoever in a decision that is based on the wrong claimant? How can there be a valid treating physician analysis when we don't know if we have all of Plaintiff's own records, and when the ME, who thought Plaintiff was doing just fine, reviewed the records of a different person? This other individual may be doing "well with her MS," but how does Dr. Dardas think this Plaintiff is doing?  While some of Dr. Dardas' records regarding the Plaintiff are part of the file, did he record other clinical observations that were not provided to the ALJ? Would the

-12-

ME's opinion be different if he had not considered the incorrect records?  How valid is an RFC that is based on the records of a different claimant?

In colloquial terms, this case is a "no-brainer," and the Commissioner's argument that the error is somehow "harmless" borders on frivolous. The case needs to be remanded for the ALJ, the VE, the ME and anyone else involved in this claim to get it right.

## B. Remand is Also Appropriate for Further Fact-finding and Consideration of the Newer Evidence

In addition to the above-stated grounds for remand pursuant to Sentence Four of 42 U.S.C. 405(g),[3] upon remand, the ALJ should also be directed to consider the "Sentence Six" evidence submitted subsequent to the administrative hearing (Tr. 309-555).

The sixth sentence of 42 U.S.C. § 405(g) states that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ..."  Under regular circumstances, this Court may consider the additional evidence only for purposes of determining whether remand is appropriate under the sixth sentence of 42 U.S.C. § 405(g).

However, the fact that Plaintiff has not specifically requested a "Sentence Six" remand in this Court does not prevent the ALJ from considering the newer material upon a remand under Sentence Four.  An error requiring a Sentence Four remand allows the ALJ consider the new material, whether or not she has otherwise met the requirements for a Sentence Six remand.  *Faucher v. Secretary of Health and Human Services,* 17 F.3d 171, 176 (6th

---

[3]   A "Sentence Four" remand ordering further administrative proceedings must be done in conjunction with a final judgment.  *See Shalala v. Schaefer*, 509 U.S. 292, 303, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993) (a Sentence Four remand requires entry of judgment); *Melkonyan v. Sullivan,* 501 U.S. 89, 101-02, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991)(a final judgment must accompany a sentence four remand order).

Cir.1994).

Here, the newer records, including treating source observations created before and after the September 10, 2010 administrative opinion, are material to Plaintiff's application for benefits. They also have the advantage of actually pertaining to Ms. Salinas. Treating records created in June, 2010 state that she experienced vision loss and arm tingling (Tr. 359). January and February, 2011 notes indicate that she continued to experience vision loss and manipulative restrictions (Tr. 332-335). Additional records document facial and leg numbness as well as restrictions in daily activities (Tr. 366, 372-373, 375). January, 2012 MRI studies showed demyalinating changes consistent with the progression of MS (Tr. 554-555).

Accordingly, I recommend that this case be remanded to the administrative level, requiring that (1) files referring to an individual other than Plaintiff be redacted from the transcript (2) the ALJ re-contact Dr.Dardas for the purpose of determining whether additional treating records pertaining to Plaintiff exist, and (3) the ALJ consider records submitted subsequent to the September 10, 2010 administrative opinion.

## CONCLUSION

For the reasons stated above, I recommend that Plaintiff's Motion for Summary Judgment [Doc. #12] be GRANTED, that Defendant's Motion for Summary Judgment [Doc. #17] be DENIED, and that the case be remanded for further administrative proceedings, which will include (1) redaction of files pertaining to the other individual, (2) re-contacting the treating physician to determine if additional treating records exist for Plaintiff, and (3) consideration of records submitted subsequent to the September 10, 2012 administrative opinion. Any objections to this Report and Recommendation must be filed within 14 days

of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR

72.1(d)(2). Issue first raised in objections to a magistrate judge's report and recommendation

are deemed waived. *U.S. v. Waters,* 158 F.3d 933, 936 (6th Cir. 1998). Failure to file specific

objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140,

106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.

1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which

raise some issues but fail to raise others with specificity will not preserve all the objections

a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931

F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370,

1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to

be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the

opposing party may file a response. The response shall be not more than 20 pages in length

unless by motion and order such page limit is extended by the court. The response shall

address specifically, and in the same order raised, each issue contained within the objections.


Dated: June 5, 2013                     s/ R. Steven Whalen
                                        R. STEVEN WHALEN
                                        UNITED STATES MAGISTRATE JUDGE


I hereby certify that a copy of the foregoing document was sent to parties of record on June
7, 2013, electronic and/or by U.S. mail.

                                        s/Michael Williams
                                        Relief Case Manager to the Honorable
                                        R. Steven Whalen